## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | | |
|---|---|---|
| CERTUSBANK, N.A., as successor by assignment to ATLANTIC SOUTHERN BANK, | : : : | |
| Plaintiff | : : | CIVIL ACTION NO. 5:14-CV-69-LJA |
| v. | : : | |
| GENE DUNWODY, JR.; GENE DUNWODY, SR.; JACK W. JENKINS; W. TONY LONG; and L. ROBERT LOVETT, | : : : : | |
| Defendants | : : | |

---

## DEFENDANTS' JOINT RESPONSIVE BRIEF TO
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

COME NOW Gene Dunwody, Jr.; Gene Dunwody, Sr.; Jack W. Jenkins; and W. Tony Long ("Defendants")[1] and file their Joint Responsive Brief To Plaintiff's Motion for Summary Judgment, showing the Court as follows:

## ARGUMENT AND CITATION OF AUTHORITY

### I.    APPLICABLE SUMMARY JUDGMENT STANDARD.

The moving party has the initial burden of establishing its entitlement to summary judgment. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1992). The moving party must identify the pleadings, discovery materials, or affidavits that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If the initial burden is satisfied by the plaintiff, the burden shifts to the defendant to identify a fact issue. In determining whether a genuine issue of material fact exists, the Court

---

[1] The case is stayed as to Defendant L. Robert Lovett due to his bankruptcy. A suggestion of bankruptcy was filed on November 13, 2014. [Docket no. 27]

must view the evidence in the light most favorable to the nonmoving party.  Rosen v. Biscayne Yacht & Country Club, Inc., 766 F.2d 482, 484 (11th Cir. 1985).

Plaintiff's complaint is based on Georgia law and, under Georgia law, summary judgment is an extreme remedy and should only be applied where there is clearly no genuine issue of fact to be tried.  Greene v. Fulton-Dekalb Hosp. Auth., 177 Ga. App. 499, 501-02, 339 S.E. 2d 770 (1986).  Moreover, Georgia law is well-settled that to be entitled to summary judgment a movant must pierce each affirmative defense asserted in the case.  Abalene Pest Control Svcs. v. Orkin Exterminating Co., 196 Ga. App. 463, 466-67, 395 S.E. 2d 867 (1990).

In a suit to enforce a promissory note or personal guaranty, the lender states a *prima facie* case of liability by producing the applicable note, showing its execution, and that it is in default, but still has the burden of *piercing each defense asserted by the borrower such that no material issue of fact remains to be tried.*  City of Bremen v. Regions Bank, 274 Ga. 733, 740, 559 S.E. 2d 440 (2002), Collins v. Regions Bank, 282 Ga. App. 725, 639 S.E. 2d 626 (2006), Ramirez v. Golden, 223 Ga. App. 610, 478 S.E. 2d 430 (1996).  Where a defendant pleads a "legally-viable affirmative defense supported by some evidence rather than mere guesswork" summary judgment is improper.  City of Bremen v. Regions Bank, 274 Ga. at 740.  A plaintiff's burden of piercing such an affirmative defense means just that.  Merely addressing an enumerated defense without dispensing with its viability is insufficient to warrant summary judgment.  Indeed, the failure to pierce each such defense or counterclaim and thereby demonstrating a complete absence of triable issues of material fact precludes summary judgment, as a matter of law.  Abalene Pest Control Svcs. v. Orkin Exterminating Co., 196 Ga. App. at 466-67.

Here, Plaintiff has failed to demonstrate an absence of material issues of fact for trial at a minimum as to its *prima facie* case.  Plaintiff's treatment of these fundamental issues in its Brief

in support of its Motion is simply insufficient to show that Plaintiff is entitled to judgment as a matter of law as there are unquestionably genuine issues of material fact to be tried as to each.

## II.   SUMMARY OF ARGUMENT.

Defendants contend that summary judgment is inappropriate for three reasons.  First, Plaintiff has not proved its alleged damages with a reasonable degree of certainty.  The affidavit of Ray Personaire, a bank officer with Plaintiff, contains conflicting information and hearsay. Second, attorneys' fees are not owed because the notice of attorneys' fees provided referred to a note which contained a contractual attorney fee provision.  However, the note referred to in both of Plaintiff's demand letters did not contain an attorney fee provision, rendering the notice invalid under Georgia law.  Finally, Plaintiff foreclosed on real estate and attempted to obtain a judicial confirmation of the foreclosure price in a proceeding held in Superior Court of Bibb County, Georgia.   This confirmation case was tried and lost by Plaintiff.   This judicial foreclosure confirmation was a prerequisite and jurisdictional requirement for Plaintiff to bring this deficiency action following foreclosure.  Finally, the guarantees were capped.  By smoke and mirrors, Plaintiff claims attorney fees of 12 times the capped claim.  Accordingly, Plaintiff's motion for summary judgment should be denied.

## III.   PLAINTIFF HAS FAILED OT DEMONSTRATE AN ABSENCE OF ISSUES OF MATERIAL FACT TO BE TRIED REGARDING THE AMOUNT OF DEBT CLAIMED.

### A.   The affidavit of Ray Personaire does not establish damages with reasonable certainty.

An affidavit must comply with the rules of evidence just as live testimony given in open court must comport with the rules of evidence.  In that regard, the Georgia Code states that affidavits offered in support of a motion for summary judgment "shall set forth such facts as would be admissible in evidence." O.C.G.A. § 9-l-56(e)(emphasis supplied).  The use of the

term "shall" in the Code section governing affidavits in support of motions for summary judgment indicates that it is mandatory that the contents of the affidavit be admissible under the rules of evidence.  See e.g., City of Atlanta v. Lane, 276 Ga. 339, 340 (2003) (term "shall" indicates mandatory nature of statute); Triguero v. ABNAMRO Bank NV, 273 Ga. App. 92, 95 (2005) ("Affidavits in opposition to motions for summary judgment must conform to O.C.G.A. § 9-11-56(e) as to the rules of evidence.").

When the amount of a debt claimed by a plaintiff is based on a lender's business records, those records must generally accompany an affidavit purporting to establish the amount of a debt.  See Mountain Bound, Inc. v. Alliant Food Service, Inc., 242 Ga. App. 557, 560 (2000). OVIP, Inc. v. Blockbuster Textiles, LLC, 289 Ga. App. 276 (2008) ("Business records, when appropriate, must accompany an affidavit purporting to establish the amount of a debt.")  The purpose of such a rule is to require that the party seeking summary judgment provide the direct, *detailed* evidence establishing the amount owing.

In a suit on a note, just like any other action, plaintiff must prove its damages with reasonable certainty.  In Ezeoke v. KIA Card Services, N.A., 320 Ga. App. 73, 73 (2013), the Court stated: "Where a party sues for damages, he has the burden of showing the amount of loss in a manner in which the trial judge can calculate the loss with a reasonable degree of certainty."

The "loan history" for loan no. 4500, a copy of which is attached to the affidavit of Mr. Personaire, starts with an original principal balance of $176,752.13 on April 16, 2008. [Affidavit of Ray Personaire dated December 22, 2014 (hereafter "Personaire Affidavit"), Appendix 1] Instead of showing a day-to-day principal balance, the principal balance remains thereafter as "0" for the period of time from April 16, 2008 to October 8, 2011, during which there were payments, with extra payments being applied to principal, and additional loan advances.  Still,

the running balance is constant at "0". Then, on October 8, 2011, the number of $176,752.13 (the same as on April 16, 2008) is magically inserted as a principal balance, with no explanation whatsoever as to how that amount was achieved. This cannot be correct since the document shows on its face there were principal reduction payments on May 10, 2011 and October 14, 2009.

The "loan history" for loan no. 4300 [Appendix 1 to Personaire Affidavit] starts on April 16, 2008 and shows no running principal balance until October 8, 2011 when it jumps to $1,222,011.47 with no explanation.

It is clear that the principal balance was not zero from 2008 and 2011 as shown in the loan history. The loan statements attached to the affidavit are inconsistent, contradictory, incorrect, or, at least, incomplete.

Where the witness' testimony is self-contradictory on a material point without explanation, the Court is required to disregard those portions of the testimony. <u>Cowart v. Widener</u>, 287 Ga. 622, 633 (2010).

**B.    <u>The Personaire Affidavit contains inadmissible hearsay.</u>**

Summarized statements are inadmissible on a motion for summary judgment to support the duty of the moving party to prove a *prima facie* case. In <u>Capital City Developers, LLC vs. Bank of N. Georgia</u>, 316 Ga. App. 624, 627-28 (Ga. Ct. App. 2012), the Georgia Court of Appeals held that a summarized statement presented by the bank was accompanied by what appeared to be a printout of payments, late charges, and other fees offered as evidence of the current amounts owed. The Court denied the admissibility of such evidence as they were summaries unaccompanied by the underlying business records on which they were based and as such they are inadmissible hearsay evidence.

The loan payoff statements [Appendix 2 to Personaire Affidavit] contain inadmissible hearsay.  Appraisal expenses of $22,855.68 are included with no supporting documents.  These, together with property taxes of $11,700.00 are all hearsay and are included in the payoff as summaries.  As stated in the Capital City case, these summary documents are inadmissible to establish the amount of indebtedness.  The affidavit is, therefore, insufficient to establish Plaintiff's *prima facia* case.

### C.   Attorneys' fees are not owed.

According to the Personaire Affidavit, attorneys' fees are $28,691.13 on note 4500 and $142,411.48 on note 4300.  Attorneys' fees, here, are not owed.  The demand for attorneys' fees under O.C.G.A. § 13-1-1, with reference to notes 4300 and 4500, was defective.  Both demand letters referenced a contractual fee claim based on "a note".  The note 4500 letter, dated August 17, 2012, referred to "a note dated April 16, 2010 in the principal amount of $176,452.13."  The demand for note 4300 referred to a note dated April 28, 2011 in the amount of $1,286,369.29.  Plaintiff's attorney, however, admitted that this note had no attorney fee provision.[2] [Confirmation hearing transcript dated September 30, 2013, at 16; Declaration of Wesley J. Boyer, Exhibit 3]

O.C.G.A. § 13-1-11 is in derogation of common law and must be strictly construed.  Ratliffe v. Hartsfield, 49 Ga. App. 598 (1934).  Here, one notice refers to an attempt to collect attorneys' fees under the "note" dated April 28, 2011.  The other notice referred to a promissory "note" dated April 16, 2010.  These notes had no attorneys' fees provision.  Defendants could easily refer to said note and, after finding no attorneys' fees provision, conclude that attorneys' fees cannot be collected.  At least one case has suggested that the notice must state the contract

---

[2] Only the no. 4300 note was at issue in the confirmation hearing.

upon which the attorneys' fees claim is based. <u>Rylee v. Bank of Statham</u>, 7 Ga. App. 489 (1920).

Moreover, there was no evidence presented that the notice was received by Defendants. The only evidence is that it was sent. Thus, Plaintiff does not have a valid attorney fee claim in this case due to the failure to strictly comply with O.C.G.A. § 13-1-11.

**D.    Plaintiff's deficiency suit is barred because it failed to obtain judicial confirmation of its foreclosure sale.**

Plaintiff advertised for foreclosure, under a security deed, the former Macon Rescue Mission building a/k/a 500, 506, and 516 Martin Luther King, Jr. Boulevard, Macon, Georgia. The foreclosure took place on December 4, 2012. Plaintiff reported the sale to the Superior Court of Bibb County and a report of sales and application for confirmation was filed with the clerk. [Declaration of Wesley J. Boyer, Exhibit 1] Plaintiff obtained a *rule nisi* and Defendants, through counsel, acknowledged service of the *rule nisi*. The application for confirmation was heard on September 30, 2013. Transcript excerpts are attached. The parties submitted post-trial briefs. [Declaration of Wesley J. Boyer, Exhibit 3]

By order dated January 9, 2014, the Superior Court denied Plaintiff's petition for judicial confirmation. [Declaration of Wesley J. Boyer, Exhibit 2] Although there were allegations of bid-chilling practices by Plaintiff leading up to the foreclosure sale, the Court did not reach these contentions since it determined that Plaintiff did not sustain its burden of showing that the property brought fair market value at the foreclosure sale. [Id.]

O.C.G.A. § 44-14-161(b) provides:

Sales made on foreclosure under power of sale -- When deficiency judgment allowed; confirmation and approval; notice and hearing; resale

(a) When any real estate is sold on foreclosure, without legal process, and under powers contained in security deeds, mortgages, or other lien contracts and at the

sale the real estate does not bring the amount of the debt secured by the deed, mortgage, or contract, no action may be taken to obtain a deficiency judgment unless the person instituting the foreclosure proceedings shall, within 30 days after the sale, report the sale to the judge of the superior court of the county in which the land is located for confirmation and approval and shall obtain an order of confirmation and approval thereon.

(b) The court shall require evidence to show the true market value of the property sold under the powers and shall not confirm the sale unless it is satisfied that the property so sold brought its true market value on such foreclosure sale.

(c) The court shall direct that a notice of the hearing shall be given to the debtor at least five days prior thereto; and at the hearing the court shall also pass upon the legality of the notice, advertisement, and regularity of the sale. The court may order a resale of the property for good cause shown.

In Community & Southern Bank v. DCB Investments, LLC, 328 Ga. App. 605, 608-09 (2014), the court addressed the purpose of § 44-14-161(b):

As our Supreme Court has noted, the purpose of this legislation "was stated to limit and abate deficiency judgments in suits and foreclosure proceedings on debts." Thus, as made clear by the plain meaning of the relevant statutory text, before a creditor is entitled to file an action to obtain a deficiency judgment against a debtor, it must report the foreclosure sale to and obtain confirmation of the sale from the superior court of the county where the foreclosed land was located by demonstrating that the sale was lawfully conducted and brought at least the fair-market value of the land on the date of the sale.

Under Georgia law, a lender may sue on the note or foreclose. If it sues first and gets a judgment, then it can foreclose and avoid the judicial confirmation requirement. Taylor v. Thompson, 158 Ga. App. 671, 672-73 (1981). However, when it forecloses first, it must comply with the confirmation statute before seeking a deficiency action. In Tampa Investment Group v. BB&T, 290 Ga. 724, 726-27 (2012), the court stated:

[T]his Court has long held that a creditor holding a promissory note secured by real property may either sue on the note or foreclose "until the debt is satisfied." (Emphasis omitted.) SRB Investment Services v. Branch Banking and Trust Co., supra. at 6(3)(a). Indeed, such creditor "is not put to an election of remedies as to whether he shall sue upon the note or exercise a power of sale contained in the deed, but he may do either, or "pursue both remedies concurrently until the debt is satisfied." Oliver v. Slack, 192 Ga. 7, 8(2)(14 S.E.2d 593)(1941). See also REL Development v. Branch Banking & Trust Co., 305 Ga. App. 429, 431(1) (699

S.E.2d 779)(2010); 5 Baxter Dunaway, L. Distressed Real Est. § 67A:17. Thus, if the creditor first obtains a money judgment, he may thereafter exercise the power of sale so long as that judgment has not been successfully enforced by execution or the underlying debt otherwise satisfied. Taylor v. Thompson, 158 Ga. App. 671, 672 (282 S.E.2d 157)(1981); Norwood Realty Co. v. First Fed. Sav. and Loan Assn., 99 Ga. App. 692, 694(1)(109 S.e.2d 844)(1959). Conversely, if the creditor first elects to exercise the power of sale, he may subsequently proceed to sue on the note if the foreclosure sale is not fully consummated and as a result none of the underlying debt is satisfied. Federal Deposit Insurance Corp. v. Dye, 642 F.2d 837, 843 (ii) (5th Cir. 1981) (applying Georgia law). Of course, if the foreclosure sale is consummated and a portion of the underlying debt is thereby satisfied, then pursuant to O.C.G.A. § 44-14-161 (a) the creditor must timely seek confirmation before a deficiency action is authorized. Compare Georgia R. Bank & Trust Co. v. Griffith, 176 Ga. App. 198, 200(2)(335 S.E.3d 417(1985)(confirmation not required if creditor had already obtained money judgment prior to foreclosure); Taylor v. Thompson, supra. at 673.

The confirmation rules are applicable to both primary debtors and guarantors.  In Peoples Bank v. Harp, 948 F.Supp.2d 1335, 1342 (N.D. Ga. 2013) the court stated:

> This statute "applies to both primary debtors and guarantors; an action for the balance remaining on a note following a foreclosure sale against a guarantor . . . is barred if no confirmation was obtained." U.S. v. Yates, 774 F.Supp. 1368, 1372 (M.D. Ga. 1991) (citations omitted).

In 2013, Georgia foreclosure law was shaken up in HWA Properties, Inc. v. Community & Southern Bank, 322 Ga. App. 877 (2013); cert. denied, 2013 Ga. App. Lexis 980 (Ga. Nov. 18, 2013).[3]  The HWA case had a complex procedural history.  First, the bank sued on a note and guaranty in Fulton County.  During the pendency of the Fulton County case, the bank then foreclosed on the real property securing the note, which was located in Fannin County.  After the completion of the foreclosure sale, the bank filed a confirmation proceeding in Superior Court of Fannin County.  The foreclosure sale was confirmed by the Fannin Superior Court in March of 2012.  Subsequently, the bank filed a motion for summary judgment in the Fulton case.  The debtor and guarantor appealed the confirmation order and in March of 2013, the Court of

---

[3] The change was discussed in Lenders Rejoice:  Foreclosure Statute May Be Waived By Guarantor , The Georgia Bar Journal, Vol. 19, No. 7 (June 2014).

Appeals reversed the Fannin County Court's confirmation. While the confirmation appeal was pending, in June of 2012, the Fulton County Court entered summary judgment in favor of the bank against the debtor and guarantor for the deficiency. The debtor and guarantor then appealed the summary judgment order.

In July of 2013, the Court of Appeals reversed the judgment as to the debtor, but affirmed the judgment against the guarantor based on the waiver provisions in the guaranty. The guarantees, as in this case, contained a waiver by the guarantors of anti-deficiency statutes. Relying on several previous Georgia cases, the Court stated that a guarantor may contract in advance to waive certain defenses which would otherwise provide a release to him. HWA was followed by Judge Treadwell in CertusBank, N.A. v. JSD-South Land Resources, LLC, 2014 U.S. Dist. Lexis 155902 (M.D. Ga. 2014). Plaintiff also relies on Community & Southern Bank v. DCB Investors, supra. JSD, HWA, and DCB all had a significantly different procedural and factual history.[4]

This case, unlike HWA, JSD, or DCB, involved the situation where the lender tried first (before suing on the note and guarantees) to foreclose and obtain foreclosure confirmation, and confirmation was denied. No case addresses this fact pattern in relation to a waiver in a guarantee. Plaintiff named the primary debtor and the guarantors as respondents in the confirmation proceeding. The confirmation was fully litigated, briefed, and decided against Plaintiff. But for the waiver language in the guarantees and the new development of the HWA case, this case would not exist.

As shown above, the sequence of the suit/foreclosure is important. Enforcing the boilerplate waiver after a judicial foreclosure completion is tried and lost violates the

---

[4] In JSD, the lender did not attempt foreclosure confirmation on one of the notes. In HWA there was a suit on the note filed before the foreclosure process was initiated.

jurisdictional aspect of § 44-14-161.  As the court in <u>Tampa Investment Group v. BB&T</u>, <u>supra</u>., stated, "if the foreclosure sale is consummated and a portion of the underlying debt is thereby satisfied, then pursuant to O.C.G.A. § 44-14-161 the creditor must timely seek confirmation before a deficiency suit is authorized."  It is not surprising, therefore, that at least one federal court has held that O.C.G.A. § 44-14-161 is jurisdictional.  <u>Archer Capital Fund, LP v. TKW Partners, LLC</u>, 2009 U.S. Dist. Lexis 64827, p. 10-11 (N.D. Ga. 2009).  ("section 44-14-161 is a jurisdictional prerequisite and rendered deficiency suit void *ab initio*).

A jurisdictional statute is a statute which confers authority to adjudicate upon the court. See <u>Archer Capital</u>, <u>supra</u>.  O.C.G.A. § 44-14-161 is clear.  Plaintiff cannot sue on a deficiency after foreclosure without obtaining a judicial confirmation.[5]  Generally, jurisdictional statutes are not subject to waiver, while non-judicial statutes are like alternative defenses, which may be waived.  <u>John R. Sand & Gravel Co. v. U.S.</u>, 552 U.S. 130, 140 (2007) (Stevens, dissenting).

For Plaintiff to try and lose the confirmation case, and then sue the guarantors makes for a huge waste of resources and an absurd result.  The law generally disfavors "second bites" at the apple.  The "law of this case" is one example.  Also, the plaintiff party must generally object to testimony before the witness answers.  Otherwise, the party could wait and hear the answer, and if harmful to the case, object, and not object if the testimony is helpful.  Plaintiff could have easily asked to enforce the waiver in the foreclosure confirmation.  It could have objected to the guarantor's participation in that proceeding.  Instead, it chose a path, lost, and now seeks a second bite.

A waiver is a knowing relinquishment of a right.  Plaintiff could have sued before foreclosure, but instead it chose to attempt the confirmation.  By choosing to foreclose and fight

---

[5] This is, clearly, a deficiency suit.  <u>People's Bank, supra</u>.; <u>Archer Capital, supra</u>.

a confirmation battle against the guarantors, Plaintiff essentially "waived the waiver."

Finally, Plaintiff's case is tantamount to a collateral attack on the confirmation denial. Clearly, the Superior Court found that there were problems with the foreclosure process sufficient to deny confirmation. The Court expressly held that Plaintiff did not show that Plaintiff proved its foreclosure bid was for fair market value. It did not reach the allegations of bid chilling practices by Plaintiff [Confirmation transcript at 88-95][6], and other improprieties, including foreclosure notice issues [Confirmation transcript at 5-20]. Plaintiff's entire deficiency debt was eliminated by the denial of foreclosure confirmation.

### E.      The guaranties are limited in amount.

It is also important to note that the personal guarantees are limited to $33,045.00 in note 4500 and $241,280.00 in note 4300, plus costs and fees. [Plaintiff's brief at 12] Although it is not entirely clear how Plaintiff calculates damages, in computing its damages against Defendants, however, Plaintiff apparently adds interest accumulated on the uncapped principal, plus other costs and statutory attorneys' fees calculated upon the uncapped principal. In the end, Plaintiff claims $185,304.76, of which $171,102.57[7] is statutory attorney fees. Subtracting the attorney fee claim of $171,102.57 from the $185,304.76 sought, the debt without attorney fees are $14,202.19.

> The Jenkins guaranty (a similar provision is in the other guarantees) states:
>
> My liability will not exceed $33,045.00 of the principal amount outstanding at the default, plus accrued interest, attorneys' fees and collection costs, when allowed by law, and all other costs, fees, and expenses agreed to be paid under all agreements evidencing the debt and securing payment of the debt.

---

[6] A loan officer of Plaintiff had told Defendant Gene Dunwody, Jr., repeatedly, there would be no deficiency at foreclosure. A few days before foreclosure the bank officer sent an email stating that he was mistaken about the deficiency. [Id.]

[7] See payoff statements (Appendix 2 to Personaire Affidavit). Fees under note 4500 are $28,691.29 and under note 4300 they are $142,411.28, totaling $171,102.57.

To the extent Plaintiff reads this as allowing it to charge interest, attorney fees, and other charges, or the uncapped obligation, the contract is unconscionable.[8]

An unconscionable contract is "one abhorrent to good morals and conscience . . . one such as no man in his senses and not under a delusion would make on the one hand, and as no honest and fair man would accept on the other." F.N. Roberts Pest Control Co. v. McDonald, 132 Ga. App. 257, 260 (1974).   Under the facts of this case, the contractual attorneys' fees provision Plaintiff seeks to enforce is unconscionable.  The intent and purpose of O.C.G.A. § 13-1-11 is "to prevent a contractual provision for attorney's fees from constituting a penalty for failure to pay an indebtedness." Radioshack Corp. v. Cascade Crossing II, LLC, 282 Ga. 841, 845 (2007).  It should not be used as a device for a lender to obtain an undeserved and unreasonable windfall at a debtor's expense.

Courts have noted the unjust outcomes that occur under Code Section 13-1-11 even as to a 15% attorney fee obligation.  See, e.g., US v. Allen, 699 F.2d 1117, 1123 (11th Cir. 1983)(stating attorney's modest efforts did not justify such large fee award, but not ruling on validity of statute because it was not being challenged).  In one case, the Georgia Court of Appeals remanded a case with the instruction that the amount of attorneys' fees awarded under Code Section 13-1-11 be reduced after proceeds from the collateral sale were deducted from the outstanding principal balance.  See David v. ITT Diversified Credit Corp., 174 Ga. App. 910, 911 (1985)(holding that award was excessive when calculated without giving credit for amount obtained upon sale of collateral).

---

[8] O.C.G.A. § 13-1-11 enforces an attorney fee provision of "up to 15%" of the note or other evidence of indebtedness.  New subsection (b), apparently not applicable here, allows the court to reduce the 15%, based on reasonableness, when the amount of attorneys' fees exceeds $20,000.00.

Other states have recognized that contract provisions providing for awards of attorneys' fees equal to just ten (10%) percent of the principal amount owed are unconscionable. For example, in Florida, courts recognize that attorneys' fees provisions are meant to compensate parties for money spent to protect their interest. See Coastal Community Bank v. Jones, 23 So.3d 757, 759 (Fla. 1st DCA 2009). Such provisions are not designed to allow prevailing parties to recover sums above what were actually paid to their attorneys. Id. Indeed, the Florida Supreme Court has held that a note that obligates a party to pay 10 percent of the principal as attorneys' fees is only enforceable to the extent the note holder actually paid or owes those fees to its attorneys. See Sarasota Pub. Co. v. E. C. Palmer & Co., 102 Fla. 303, 304 (1931). Florida courts have so held in other contexts as well. See, e.g., Brett v. First Nat. Bank of Marianna, 97 Fla. 284, 286 (1929)(holding contractual stipulation for attorneys' fees intended as indemnity to protect interest and not designed to provide a sum above what was actually paid to attorney); Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145, 1151 (Fla. 1985)(noting that "[c]ounsel is expected, of course, to claim only those hours that he could properly bill to his client.").

Here, attorneys' fees of $171,102.57 on a debt of $14,202.19 is unconscionable. Plaintiff, in effect, seeks attorneys' fees of 12 times the alleged debt.

## CONCLUSION

For the reasons stated herein, Plaintiff's motion for summary judgment must be denied.

KATZ, FLATAU & BOYER, L.L.P.
By:

_____

WESLEY J. BOYER
State Bar No. 073126
Attorney for Defendants
355 Cotton Avenue
Macon, Georgia 31201
(478) 742-6481
wjboyer_2000@yahoo.com

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the

DEFENDANTS' JOINT RESPONSIVE BRIEF TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

upon the following:

Sean A. Gordon, Esq.
Greenberg Traurig, LLP
The Forum, Suite 400
3290 Northside Parkway
Atlanta, GA 30327

by depositing a copy of the same in the United States mail, first class, in a properly addressed envelope with sufficient postage affixed thereto this _21_ day of January, 2015.

_____
WESLEY J. BOYER