IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| CERTUSBANK, N.A., as successor by assignment to ATLANTIC SOUTHERN BANK, | : : : : |
| Plaintiff, | : : |
| v. | : CASE NO.: 5:14-CV-69 (LJA) |
| GENE DUNWOODY, JR., *et al.*, | : : : |
| Defendants. | : : |

## ORDER

Before the Court is Plaintiff CertusBank, N.A.'s ("CertusBank') Motion for Summary Judgment (Doc. 28.) For the reasons that follow, Plaintiff's Motion is **GRANTED.**

## FACTUAL BACKGROUND[1]

On April 16, 2010, Capricorn Centre, LLC ("Capricorn") executed and delivered a promissory note in the amount of $176,452.13 ("Note 1") and a Commercial Loan Agreement ("Note 1 Loan Agreement") to Atlantic Southern Bank. (Doc. 37, at 1-2.) On the same day, Defendants Gene Dunwoody Jr. ("Dunwoody Jr."), Gene Dunwoody Sr. ("Dunwoody Sr."), Jack W. Jenkins ("Jenkins"), and W. Tony Long ("Long") executed and delivered individual guaranty agreements for Note 1 ("Note 1 Guaranties"). (Id. at 2-5.) Capricorn defaulted when Note 1 matured on April 16, 2011 (Doc. 1, Ex. B at ¶ 3), and

---

[1] The relevant facts are derived from the Complaint (Doc. 1), Defendants' Answer to the Complaint (Doc. 18), Plaintiff's Statement of Undisputed Facts (Doc. 28-1), Defendants' Response to Plaintiff's Statement of Undisputed Facts (Doc. 37), and the record in this case. Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in the light most favorable to Defendants as the nonmoving party. See Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Defendants, each, did not fulfill the terms of their guaranties. (Doc. 1, Ex. I.) On August 17, 2012, CertusBank sent a notice of nonpayment and demand for payment, including a demand for attorneys' fees, to Defendants. (Doc. 37, at 7.)

On April 28, 2011, Capricorn executed and delivered a second promissory note, this time in the amount of $1,286,369.29, ("Note 2") and Commercial Loan Agreement ("Note 2 Loan Agreement") to Atlantic Southern Bank. (*Id.*, at 8-9.) On the same day, Defendants Dunwoody Jr., Dunwoody Sr., Jenkins, and Long also executed and delivered individual guaranty agreements for Note 2 to Atlantic Southern Bank ("Note 2 Guaranties"). (Id. at 9-13.) Capricorn defaulted when Note 2 matured on April 28, 2012 (Doc. 1, Ex. K at ¶ 3), and Defendants, each, did not fulfill the terms of their guaranties. (Doc. 1, Ex. R.) On August 7, 2012, CertusBank sent a notice of nonpayment and demand for payment, including a demand for attorneys' fees, to Defendants. (Doc. 37, at 14.)

The Georgia Department of Banking and Finance closed Atlantic Southern on May 20, 2011, and the FDIC was appointed as the Receiver for Atlantic Southern's assets and liabilities. CertusBank then obtained status as Receiver by virtue of purchase and assignment from the FDIC. As such, CertusBank is the current holder of Note 1, the Note 1 Loan Agreement, the Note 1 Guaranties, Note 2, the Note 2 Loan Agreement, and the Note 2 Guarantees. (Doc. 37, at 6, 13.)

In relevant part, the Note 1 and Note 2 Guaranties ("the Guaranties") state that the defendants are "unconditionally liable," that the "obligations to pay according to the terms of this Guaranty shall not be affected by … any other circumstances which make the indebtedness unenforceable against the Borrower," and that the guarantors "will remain obligated to pay…even if…the Borrower has such obligation discharged in…foreclosure…". (Doc. 1, Exs. D-G, M-P at ¶ 4.) The Guaranties also include certain waivers, including the agreement to "waive reliance on any anti-deficiency statute."(Id. at ¶ 9.) Finally, the Guaranties include individual caps on the liability of each defendant for the principal of each note, with a $33,045 cap for Note 1 and a $241,280 cap for Note 2. (Id. at ¶ 2.)

The Notes both state that they are "further governed by the Commercial Loan Agreement," which "states the terms and conditions of this Note." (Doc. 1, Exs. A, J at ¶ 7). The Loan Agreements provide for the payment of "expenses of collection" after default, including attorney's fees. They state that, "if this debt is collected by or through an attorney after maturity, [Capricorn] agree[s] to pay 15 percent of the principal and interest owing as attorneys' fees." (Doc 1., Exs. K at ¶ 10; B at ¶ 9.)

Note 2 was secured by a Deed to Secure Debt for certain property in Macon, Georgia. (Doc. 1, Ex. J at ¶ 12.) On December 4, 2012 CertusBank held a nonjudicial foreclosure sale on the property pursuant to the power of the sale provision in the deed and received $1,102,500 for the sale. (Doc. 39-2,) CertusBank applied for judicial confirmation of the sale, but on January 9, 2014 the Bibb County Superior Court denied CertusBank's Application for Confirmation. Id.

## PROCEDURAL HISTORY

On February 18, 2014, Plaintiff commenced this action against Dunwoody Jr., Dunwoody Sr., Jenkins, Long, Raymond. O. Ballard, and Robert Lovett. (Doc. 1.) Defendant Ballard was terminated on April 16, 2014. Defendant Lovett filed a Suggestion of Bankruptcy (Doc. 26) on November 11, 2014, which automatically stayed the case as to him, pursuant to 11 U.S.C. § 362. Plaintiff moved for summary judgment on December 22, 2014, and Defendants responded on January 23, 2014. (Docs. 28, 37, 38.) Plaintiff timely replied on February 9, 2015. (Doc. 40.) On May 11, 2016, the Court ordered the parties to advise the Court as to the status of Defendant Lovett's bankruptcy and to provide additional briefing in light of the Supreme Court of Georgia's recent decision in PNC Bank, Nat. Ass'n v. Smith, 298 Ga. 818 (2016). (Doc. 45). Parties filed their supplemental briefs on May 18, 2016). As such, Plaintiff's Motion is now ripe for review. See M.D. Ga. L.R. 7.3.1(a).

## **DEFENDANT LOVETT**

On May 9, 2016, Defendant Lovett's Chapter 11 Bankruptcy plan was confirmed and CertusBank's claims are scheduled under the plan. Consent Order Confirming Chapter 11 Plan of Debtor Linwood R. Lovett, In re: Linwood R. Lovett and Carole M. Lovett (No. 5:14-bk-52614, Doc. 181)(M.D. Ga. 2016). The bankruptcy code provides that "[T]he provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor" whether or not their claim is impaired under the plan and whether or not they have accepted the plan. 11 USC § 1141(a). Therefore, Plaintiff is bound by the judgment of the Bankruptcy Court and Defendant Lovett is **DISMISSED** from this case.

## **SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment when the party contends no genuine issue of material fact remains and the party is entitled to judgment as a matter of law. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Maddox v. Stephens, 727 F.3d 1109, 1118 (11th Cir. 2013). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." Grimes v. Miami Dade Cnty., 552 F. App'x 902, 904 (11th Cir. 2014) (citing Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Tipton v. Bergrohr GMBH-

Siegen, 965 F.2d 994, 998 (11th Cir. 1992) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. See Celotex, 477 U.S. at 323 (1986); Barreto v. Davie Marketplace, LLC, 331 F. App'x 672, 673 (11th Cir. 2009). The movant can meet this burden by presenting evidence showing there is no genuine dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. See Celotex, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." Id. at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or show that there is some metaphysical doubt as to the material facts." Matsuhita, 475 U.S. at 586 (citations and internal quotations omitted). Instead, the nonmovant must point to evidence in the record that would be admissible at trial. See Jones v. UPS Ground Freight, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form"). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. See Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict in its favor. See Celotex, 477 U.S. at 322-23; Allen, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

# DISCUSSION

A creditor in possession of a guarantee establishes a prima facie case for repayment by producing a valid guarantee and showing that it was executed. CSS Real Estate Development I, LLC v. State Bank and Trust Co., 324 Ga.App. 184, 185 (2013). After a prima facie case is established, summary judgment may be granted if the guarantor is unable to establish a defense in rebuttal. Id.; see also First Citizens Bank and Trust Co., Inc. v. Hwy 81 Venture, LLC, 2012 WL 779894, at *3 (N.D. Ga. 2012). Debtors are not entitled to "rest on allegations in their pleadings to establish affirmative defenses" but must "come forward with or point to specific facts in the record to establish affirmative defenses." Big Sandy Partnership, LLC v. Branch Banking & Trust Co., 313 Ga. App. 871, 872 (2012).

The Parties do not dispute that the Guaranties were validly executed, establishing Plaintiff's prima facie case for repayment. (Doc. 37, at 2-5, 9-13.) Defendants argue that Plaintiff's suit is barred by Georgia's anti-deficiency statute, that an award of attorneys' fees is improper, and that the evidence establishing damages is inadmissible. These defenses are meritless and do not absolve Defendants of their liability in this matter.

## I.  The anti-deficiency statute

Defendants argue that Plaintiff's suit is barred by failure to comply with Georgia's anti-deficiency statute. The statute provides that when any real estate is sold by non-judicial foreclosure, the seller may not take action to obtain a deficiency judgment unless the sale is reported to the superior court judge in the county in which the land is located for confirmation and the judge confirms the sale. O.C.G.A. § 44-14-161(a). The Supreme Court of Georgia recently construed this statute with respect to guarantors. The Court held that "a lender's compliance with the requirements contained in OCGA §44-14-161 is a condition precedent to the lender's ability to pursue a guarantor for a deficiency after a foreclosure has been conducted, *but a guarantor retains the contractual ability to waive the condition precedent requirement*." PNC Bank, Nat. Ass'n v. Smith, 298 Ga. 818, 824 (2016) (emphasis added).

As a threshold matter, Defendants appear to assert a defense based on this statute with respect to Plaintiffs' demand for payment on both Note 1 and Note 2. Note 1,

however, was not secured by any real property, and was certainly not secured by the specific property for which Plaintiff initiated foreclosure. As such, the statute is inapplicable with regard to Note 1.

With regard to Note 2, Defendants assert both that the statute's protections cannot be waived and, even if they can, that Plaintiff is barred from bringing a deficiency suit because Plaintiff was denied judicial confirmation of the foreclosure sale. Defendants waived their rights under the deficiency statute pursuant to the terms of the guarantees, and the effectiveness and propriety of the waivers was affirmed by the Supreme Court of Georgia in *PNC*, which stated that such waiver does not violate public policy because guarantors are "volunteers to the transactions" and "face neither the same disparity of bargaining power nor the same type of risk as borrowers." Id. at 822.

As to Defendants' second argument, while the failure to obtain a confirmation would have barred a deficiency judgment against Capricorn, the waivers in the Guarantees preclude Defendants' reliance on the anti-deficiency statute. In *PNC*, the court held that allowing waiver "creates an appropriate balance between the statutory protections of the confirmation statute and the freedom of a guarantor to enter contracts deemed beneficial." Id. at 822-23. As such, Plaintiffs deficiency suit is not barred and Defendant is liable for all relevant damages arising from Note 2.

## II. Attorney's fees

O.C.G.A. § 13-1-11 provides that a defaulting party must be notified that the party has ten days from receipt to pay the underlying debt or the party will also be liable for attorneys' fees. Defendants argue that Plaintiff's notice was deficient because it referred to the fee agreements contained in the "Note," when the attorneys' fees provisions were actually contained in the Loan Agreements. (Doc. 38, at 6.) Both, however, contain provisions incorporating the terms of the Loan Agreements and explicitly asserting that "The Commercial Loan Agreement states the terms and conditions of this note…" (Doc. 1, Exs. A, J at ¶ 7.) The Loan Agreements provide for the payment of 15% of the principal and interest as attorneys' fees related to the collection of debt. (Doc. 1, Ex. K, ¶ 10, Ex. B, ¶ 9.) As such, Plaintiff's demand letters provided sufficient notice to collect attorneys' fees.

Defendants also argue that they did not receive notice. (Doc. 38, at 7.) Defendants Dunwoody Jr., Dunwoody, Sr., and Jenkins, however, admitted to receiving the demand letter for attorneys' fees. (Doc. 42, at 16:16-17:13; Doc. 41, at 8:22-10:7; Doc. 44, at 8:17-9:22.) Defendant Long stated that he does not recall getting a demand letter. (Doc. 43, at 14:10-15:25). In addition to the demand letter, Georgia law proves that notice of the demand for attorneys' fees may be given through a complaint. FAS Capital, LLC v. Carr, 7 F. Supp. 3d 1259, 1269-70 (N.D. Ga., 2014); see also Upshaw v. Southern Wholesale Flooring Co., 197 Ga. App. 511, 513 (1990) ("The complaint and the attachments thereto gave sufficient notice to appellant of appellee's intent to collect attorney's fees."); New House Products, Inc. v. Commercial Plastics & Supply Corp., 141 Ga. App. 199, 200 (1977) ("[W]here a pleading, setting up a claim on a note or other evidence of indebtedness which authorizes recovery of attorney fees, alleges that notice of intent to seek attorney fees has been given and that notice is thereby given, and the notice otherwise conforms to the requirements… such notice is sufficient to authorize an award of attorney fees."). Thus, as Plaintiff alleges that Defendants were given notice, the complaint suffices to provide adequate notice of Plaintiff's intention to seek attorneys' fees. (Doc. 1, ¶¶ 40-42, 70-72; Exs. I, R) Defendant Long said in his deposition that he did not recall seeing a copy of the complaint, however, the Court finds this argument disingenuous as Defendant Long was personally served with the complaint. (Doc. 15.)

Defendants also argue that an award of attorneys' fees would be unconscionable because the award would be greater than the amount due on the principal, which has a capped obligation. (Doc. 38, at 12.) Under Georgia law, the basic test for unconscionability is "whether, in the light of the general commercial background and the commercial needs of the particular trade or case, the clauses involved are so one-sided as to be unconscionable under the circumstances existing at the time of making the contract." NEC Technologies, Inc. v. Nelson, 267 Ga. 390, 391 (1996). This test has two sub-parts: procedural unconscionability and substantive unconscionability. Procedural unconscionability looks at process of making contract, including factors such as "age, intelligence, education, business acumen and experience of the parties, their relative bargaining power, the conspicuousness

and comprehensibility of the contract language, the oppressiveness of the terms, and the presence or absence of a meaningful choice." Id. at 392. In determining substantive unconscionability, courts look to matters such as "the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns." Id. at 392.

Defendants have not argued that the attorneys' fees provisions are procedurally unconscionable, and the case law is clear that statutorily authorized awards of attorneys' fees cannot be substantively unconscionable.[2] F.D.I.C. v. Sri Chakra Group LLC, 2014 WL 415810, at *7 (M.D. Ga., 2014) ("While the contractual provision may result in a disproportionately large award of attorney's fees, it cannot be substantively unconscionable because it is authorized by statute"); William J. Cooney, P.C. v. Rowland, 240 Ga. App. 703, 704 (1999) ("That which the law itself specifically permits cannot be unconscionable.") O.C.G.A § 13-1-11(a)(1) provides that when "a note or other evidence of indebtedness provides for attorney's fees in some specific percent of the principal and interest owing thereon, such provision and obligation shall be valid and enforceable up to but not in excess of 15 percent of the principal and interest owing on said note or other evidence of indebtedness." Here, the Loan Agreements specifically provide for an attorneys' fee award of "15 percent of the principal and interest owing." (Doc. 1, Exs. K at ¶ 9; B at ¶ 9). Accordingly, the attorneys' fees provisions are not substantively unconscionable.

### III. Evidence establishing damages

The Court cannot determine the appropriate damages award from the briefing and accompanying materials before it. This, however, does not provide a basis to deny summary judgment as Defendants have not introduced any evidence to show that the amounts claimed by plaintiff are incorrect or should be calculated differently. See First Citizens Bank, 2012 WL 779894, at *6 ("Without introducing evidence to show that the amount claimed by plaintiff is incorrect, or should be calculated in a different way, defendants cannot avoid summary judgment,"); Hovendick v. Presidential Financial Corp., 230 Ga. App. 502, 505

---

[2] O.C.G.A. 13-1-11(b) now allows courts to inquire into the reasonableness of attorneys' fees awards over $20,000. But the legislature was clear that this provision only applies to contracts entered into on or after July 1, 2011. Lines 73-74 s.b. 181. The Note 1 Guaranties were entered into on April 16, 2010, and the Note 2 Guaranties were entered into on April 28, 2011.

(1998) ("Therefore, because appellants have introduced no evidence showing that the amount claimed by Presidential is incorrect and no evidence as to any other amount, there is no merit to these enumerations of error."); cf. Dunn, 248 Ga. App. at 260 (denying summary judgment after defendant produced an affidavit specifically listing disputed sales applies towards the account, including selling dates and selling prices of cotton pickers and opposing party only argued against in brief). Summary judgment shall be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). Plaintiff's failure to articulate the amount of damages is not "material" in this sense. Accordingly, summary judgment is appropriate.

      Defendants are liable to Plaintiffs for the remaining principal, limited by the Defendants' capped obligation, any interest and fees on the remaining principal not limited by the Defendants' capped obligation, and 15% of the principal and interest as attorneys' fees amassed while collecting the debt. But the loan payoff statements (Doc. 28-4) are ambiguous or incomplete for the purposes of determining damages, and Plaintiff has failed to fully explain its damages calculation and the basis for the $185,304.76 it is claiming. In order to calculate damages for Note 1, the Court needs documentation of the remaining principal,[3] the interest up to the date of this order and the future interest rate, late charges, and total amount of principal and interest on attorneys' fees. In order to calculate damages for Note 2 the court needs the same documentation as for Note 1, in addition to an explanation of how the foreclosure sale price was applied to the balance due as of the date of

---

[3] Under Fed. R. Evid. 803(6), business records are admissible if: (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified…; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. In his affidavit, Persenaire testified that he had custody and control of the loan payoff statements and that the statements were each "(i) made and prepared in the regular course of business and operations of Plaintiff; (ii) made at or near the times of the transactions or actions to which they refer and (iii) made and prepared by individuals with knowledge of the transactions or actions referenced therein." (Doc 28-2, ¶¶ 5, 60). Defendants have not presented any evidence pointing to a lack of trustworthiness of these documents. As such, the loan payoff statements are admissible under the business records exception.

that sale. Plaintiff shall provide supplemental briefing on the amount of damages within 30 days of the issuance of this order. Defendants shall have 14 days thereafter to respond.

## CONCLUSION

In light of the forgoing, Plaintiff's Motion for Summary Judgment (Doc. 28) is GRANTED. The Court **ORDERS** supplemental briefing solely on the issue of the amount of damages due to Plaintiff in line with the guidelines set forth above.

**SO ORDERED**, this  23rd  day of ____August____, 2016.

/s/ Leslie J. Abrams
**LESLIE J. ABRAMS, JUDGE**
**UNITED STATES DISTRICT COURT**